*New-Haven,*
June, 1815.

## BARRETT and WIFE *against* FRENCH and FRENCH.

THIS was an action of ejectment for a tract of land in *Southbury.* The cause was tried at *New-Haven,* at an adjourned term in *February* 1815, before *Trumbull, Baldwin* and *Ingersoll,* Js.

On the trial, the plaintiffs claimed title to the land in question, in right of the wife, as a child and heir at law of *Anna French.* The defendants, who were also children of *Anna French,* claimed under a deed from her and her husband *William French.* This deed, in consideration of love and good will, purported to *give, grant* and *confirm* to the defendants, and to their heirs and assigns forever, the land in question, *reserving to the grantors the use and improvement thereof during their natural lives.* It was in other respects in the usual form, containing covenants of seisin and warranty. The plaintiffs stated, that *Anna French,* at the time when the deed purported to be executed, was insane, and incapable, for want of understanding, of executing it; that she stood in great fear of her husband, was intimidated by his threats, and was overpowered and compelled to sign and acknowledge the deed, contrary to her free will and choice. As evidence of this statement, the plaintiffs offered to prove her declarations made before and after the date of the deed, that it was her desire and intention to give her estate to her sons and daughters in equal portions, but that her husband would not permit her so to do; that he declared to her when alone, that she should not give any of her estate to her daughters; that her master (meaning her husband) would not permit her to do as she chose in respect to her property; and that she was obliged to convey the land in question and her other lands to her sons, to keep in peace with her husband. These declarations were not made in the presence of

*A. with B. her husband, in consideration of love and good will, executed a deed purporting to give, grant and confirm certain lands to C. and D. their sons, and to their heirs, with the usual covenants of seisin and warranty, reserving to the grantors the use and improvement of the premises during their lives: Held, that though this deed could not operate as a feoffment because it purported to convey a freehold in futuro, yet it was good as a covenant to stand seised to the use of the grantors during their lives, and after their death, to the use of the grantees and their heirs.*

In an action of disseisin by one tenant in common grounding his claim to recover on the common title, his co-tenants are incompetent witnesses for him; because the possession of one tenant in common, recognizing the title of his co-tenants, being in contemplation of law the possession of all, a recovery by the plaintiff will enure to the benefit of all.

The declarations of the grantor, made prior or subsequent to the execution of the deed, not in the presence of the grantee, are inadmissible to invalidate the deed.

To avoid a deed on the ground of duress *per minas,* the threats must be such as to strike with fear a person of common firmness and constancy of mind; duress by mere advice, direction, influence and persuasion being unknown to the law.

*New-Haven,*
June, 1815.

Barrett
*v.*
French.

her husband, nor at the time when the deed was executed. The defendants, therefore, objected to their admission. The court decided that the evidence offered was admissible only for the purpose of shewing Mrs. *French's* state of mind.

In further proof of the statement made by the plaintiffs, they offered the deposition of *Aner Hinman*, one of the daughters of Mrs. *French*, and the testimony of *Joel Pearce*, the husband of another daughter. The defendants objected to the competency of these witnesses, on the ground that they were interested in the judgment which might be rendered in this suit, as a recovery in favour of the plaintiffs would enure to their benefit; for if the deed to the defendants is void, these daughters, together with the other childen, will own the land as tenants in common. The court rejected the evidence.

Before the cause was committed to the jury, the plaintiffs prayed the court to instruct the jury, that the deed to the defendants, by reason of the reservation contained in it, was void, and conveyed no title to the land in question. But the court instructed the jury, that such reservation did not render the deed void, nor in any respect affect its validity. As to the other points the charge was as follows: "It is agreed that *Anna French*, deceased, owned the land in question in fee-simple; and that she died leaving seven surviving children and heirs at law, among whom are the two defendants, and *Mercy*, the wife of *Oliver Barrett*, one of the plaintiffs. If then Mrs. *French* never parted with the property during her life, but died seised and possessed of it, and intestate, the plaintiffs have good title to the same, and ought to recover the seisin and possession of it as tenants in common with the defendants, and the rest of the heirs at law, or those claiming under them. To oppose this claim the defendants produced a deed executed in due form of law by Mrs. *French* in her life, and her husband *William French* the elder, conveying the land in question to the defendants, and their heirs forever; by virtue of which deed the defendants claim the title and seisin of the land in fee, and allege that they are in possession of the same, holding out the plaintiffs and all other persons therefrom, and have right by law so to do. To destroy the force and effect of this deed, the plaintiffs allege that it is void in law, and is not the free act and deed of Mrs. *French* for these reasons: first, that at the time of

executing it, Mrs. *French,* from the weakness and disability of her mind, was incapable of making any legal contract, or conveyance of her property ; secondly, that the deed was not her voluntary act, but obtained from her by coertion of her husband ; and thirdly, that the deed was obtained from her by fraud, falsehood and imposition. On these points much testimony has been adduced, which it becomes your province to weigh and determine. The duty of the court is only to direct you as to those principles of law which are to assist you in forming a correct decision. Such mental disabilities in the grantor as will render a deed void in law must exist at the time when it was executed. This may be proved in two ways. If the grantor, previous to the execution of a deed, is proved to have sunk into a state of idiocy, fatuity or settled insanity, and so to have continued ; this is full evidence to warrant a jury to determine the deed void, although no direct testimony should be adduced of the state of the grantor's mind at the precise time of its execution. But in case a grantor, when in usual health, is capable of transacting business, and disposing of property, but is subject to fits of lunacy, delirium or derangement, which incapacitate during their access and continuance, it is incumbent on the party who would avoid the deed, to prove that the grantor, at the time of its execution, was actually labouring under such an attack of lunacy or darangement ; otherwise the deed cannot be declared void. To this point the testimony of physicians and other persons who saw the grantor at or near the time of executing the deed, and the acknowledgment of the grantor against the validity of the deed, are admissible evidence for the consideration of the jury. On the second ground, that the deed was obtained by coertion, and was not the voluntary deed of the grantor, the court inform you, that the law is so that the only kind of coertion which can render a deed void in a court of law, must amount to duress, by which the grantor is compelled to execute it contrary to his will. No coertion or duress *by imprisonment* is claimed in this case. But where a person *by threats* is so far intimidated and put in fear as to be thereby compelled, contrary to his will, to execute a deed in order to escape from the consequences of these threats, this is called in law *a duress by threatenings.* But the threats must be such as to strike with fear a person of common firmness and constancy of mind :

and the law knows of no compulsion and duress by mere advice, direction, influence and persuasion. In respect to the third ground, that the deed is void in law because it was obtained by fraud, falsehood and imposition on the grantor, the court are of opinion that no deed can for this reason be adjudged void in law, unless the fraud and imposition be such as induced the grantor to execute it under material and essential misapprehension and mistake as to its nature, contents, legal operation and effect. It is true, that in respect to the probate or disaffirmance of a last will and testament, the law admits of a greater latitude of enquiry, construction and objection; and that voluntary deeds by the ancestor for the purpose of a family settlement of the estate among the heirs, are considered in many respects as in nature of a testamentary disposition of the property. Still the nature of these several instruments must not be confounded. Such deeds of settlement are subject to the same rules of law as are all other deeds, and are considered as instruments of equal solemnity. They cannot be adjudged void in law, unless on the same grounds and reasons as would avoid any other voluntary deed of conveyance. If the grantor, at the time of executing the deed on which the defendants rely, was in such a state of derangement, stupidity and mental disability as rendered her incapable of disposing of her property, and executing a valid deed of conveyance; or if you shall be of opinion that she did not execute the deed as her voluntary act, but was, contrary to her will, compelled to execute it, by fear and terror from such coertion and duress as would render her acts void; or that she was deceived by fraud, falsehood and imposition, and executed the deed under an essential and material misapprehension and mistake as to its nature, contents, legal operation and effect; you will find for the plaintiffs to recover the seisin and possession of the demanded premises as tenants in common with the defendants, with damages and costs of suit." The jury found a verdict for the defendants; the plaintiffs moved for a new trial; and the questions arising on such motion were reserved for the consideration and advice of the nine Judges.

*N. B. Benedict* in support of the motion. 1. The deed from *Anna French* to the defendants was void, because it purported to create an estate of freehold to commence *in fu-*

*New-Haven,*
June, 1815.

Barrett
*v.*
French.

*turo.* **By** the common law of *England,* recognized in this state, such an estate cannot be created. 2 *Bl. Comm.* 165. 311. 313. *Burwick's* case, 5 *Co.* 95. *a. Bishop* v. *Selleck,* 1 *Day's Ca.* 300. n. (*a*). After the delivery of the deed, the grantor was not in as of a new estate. While she continued to hold, the qualities of it remained as before. She would not be liable for waste ; nor would she be responsible to the grantees for the manner in which she might use it. This is not like the case of a person's giving an absolute deed, and then taking back from the grantees a lease for life ; for here the grantor retained her interest in the land ; it never passed from her ; nor did she hold, in any sense, by a title derived from her sons. But if it were such a case, it would make no difference, it being all one transaction, and having but one object in view. It would then be like the case of *Guilford* v. *Woodbury* in *New-Haven* county, in which the court decided, that a man, who purchased an estate of more than 100 dollars in value, and who received an absolute deed of the land, but gave back a mortgage of the same land to secure the purchase money, it being all one transaction, did not acquire a new settlement under his deed.

But it will probably be contended by the defendants, that the deed in question having in it the usual covenants of seisin and warranty, the grantor thereby engaged to stand seised of the land to the use of the grantees, and then the *English* statute of uses being operative here, executed the use, or created a possession in the grantees. To this it may be answered, that *Anna French,* the grantor, was a feme covert at the time of the conveyance, and therefore, the covenants in the deed did not bind her ; that though by our law, a feme covert may convey away her estate, she can enter into no covenants which will oblige her to secure the title ; and that though her husband united with her in the conveyance, the covenants were ineffectual as to him, because he was not seised of the inheritance, and so could not raise any covenant which would operate upon it. From the whole of the deed in question, it is apparent that no trust was intended to be created for the benefit of the grantees out of which an use could be raised.

2. The witnesses offered by the plaintiff were improperly rejected. The objection is, that they were sisters of Mrs. *Barrett,* one of the plaintiffs, and children and heirs at law

New-Haven,
June, 1815.

Barrett
v.
French.

of *Anna French*; and if the plaintiffs should succeed in setting aside the conveyance, they would obtain possession under the judgment for all the heirs, who would be tenants in common. To this it may be answered, in the first place, that the plaintiffs would obtain possession for themselves only. The execution would not put upon the land any persons who were not parties to the suit. Secondly, if the plaintiffs should take possession under the judgment, and hold the land as tenants in common with the defendants, it would be of no use to the other owners to enable them to recover; because for that purpose they would be obliged to establish the same facts in regard to the deed as the plaintiffs must now do; and they could make no use of this judgment for an obvious reason, that they are not parties to the suit. Should the defendants prevail in this suit, and afterwards *Pearce* and *Hinman* with their wives should commence an action to recover the same land, the judgment rendered here would be no evidence for them. No right of a public nature, such as a custom pervading a whole manor, or a right of way, is in dispute between the parties. It is admitted, that if the plaintiffs obtain possession, the witnesses may bring their action against more defendants; but their remedy will not be enlarged; their proportion of interest will remain the same.

Further, it is altogether *contingent* whether the plaintiffs will take possession under the judgment. If they should not, but should convey their interest in the property to the defendants, no possible advantage could be obtained by the decision.

3. The declarations of Mrs. *French* made before and after the date of the deed, ought to have been received for the purpose of proving that the deed was not her voluntary act, but was obtained from her by the coertion of her husband. This is the only way of ascertaining the truth in such a case. It is not to be supposed, that threats of violence to the wife from her husband will be made before witnesses. He may terrify her in secret to such a degree that she will not dare to refuse a compliance, or to intimate in his presence that her act is not voluntary. And in this case, there is no danger that a title created by her will be improperly defeated, inasmuch as her declarations were not made with a view to enable her to resume her property, and the

Barrett
*v.*
French.

only effect of the evidence, if admitted, would be to dispose of the property equally among the children.

4. The charge was incorrect as to the nature and degree of coertion necessary, in a case circumstanced like this, to avoid the deed.

*N. Smith* and *R. M. Sherman,* contra, contended, 1. That the deed of Mrs. *French* and her husband, conveying the land in fee-simple, with a reservation of the use and improvement thereof to themselves during their lives, was effectual. They admitted, that no doctrine of the common law is better established in *England,* than the rule that an estate of freehold cannot be created to commence *in futuro,* but must take effect presently, either in possession or remainder. The reason of this rule is, that by the common law livery of seisin is essential to pass a freehold estate ; and livery of seisin, from its nature, must operate immediately. But in this state, livery of seisin is dispensed with, and the freehold of lands becomes vested by a record of the deed in the town-clerk's office.(*a*) There is, therefore, no more reason here, why a freehold estate may not be created to commence at a future period, than there is why a chattel interest may not be thus created.

But if this view of the subject should not be satisfactory, the validity of the deed may be established on another ground. It was a grant from a mother to her sons, in consideration of blood, with a covenant that the grantor was well seised of the premises in fee, and a reservation of the use to the grantor during her life. This conveyance, in legal effect, is a covenant by the grantor to stand seised of the land, to her own use during her life, and after her death to the use of the grantees and their heirs. If the operation of such a conveyance is the same here as in *England,* the grantor became vested with an estate for life in the land, with remainder in fee to the grantees. No freehold was created to commence *in futuro,* but it took effect instantly upon the execution of the deed. The statute 27 *Hen.* 8. had long been in force when our ancestors emigrated to this country, and was considered by them as a part of the common law ; our courts, therefore, gave effect to it as a part of our common law. In *Bacon* v. *Taylor, Kir.* 368. it was held,

(*a*) Vide *Chalker* v. *Chalker,* ante 88.

*New-Hoven,*
June, 1815.

Barrett
*v.*
French.

that a use at common law is executed in the *cestui que use ;* and such has been the commonly received opinion of judges and counsel in this state. In *Massachusetts* also the statute of uses has been judicially adopted. *Wallis* v. *Wallis,* 4 *Mass. Rep.* 135. It probably has been adopted in the same manner in most of our sister states, although no such act as the 27 *Hen.* 8. is to be found in their statute-books.

The deed in question is not a novelty in this state. The usual mode in which parents make settlements upon their children is by a grant of the premises in fee, reserving the use to themselves during life. Formal covenants to stand seised to uses are also in frequent use.

If there be a doubt whether there are sufficient words in this deed to create a covenant to stand seised, it may be observed, that the word " *grant*" alone is sufficient. It is an abridgment of the word " *warrant*," and of itself imports a covenant. *Doe* d. *Milburn* v. *Salkeld, Willes* 673. *Roe* d. *Wilkinson* v. *Tranmarr, Willes* 682. In *Osmere* v. *Sheafe, Carth.* 307. (S. C. by the name of *Osman* v. *Sheafe,* 3 *Lev.* 370.) the words of the deed were " *give and grant ;*" and the court held, that this was a good conveyance by way of covenant to stand seised. Indeed, no position can be clearer than that the words of this deed, according to the *English* decisions, would constitute such a covenant. Are not those decisions applicable here ? Whatever difference there is between the *English* law and ours is in favour of their application.

2. The wives of *Pearce* and *Hinman* had an interest in the event of the suit. If the conveyance to the defendants were set aside, all the children of Mrs. *French* would take as heirs at law, and would be tenants in common of the estate. The possession and seisin of one tenant in common being the possession and seisin of all, when the plaintiffs recovered, they would have recovered for the benefit of all. 2 *Cruise's Dig.* 551. *s.* 11. The witnesses might then have their action of account for the rents and profits, or a writ of partition. The witnesses before were disseised ; then they would not be.

3. As to the point regarding the declarations of Mrs. *French,* it ought to be remarked, in the first place, that the plaintiffs stand in the same situation as the ancestor under whom they claim. The question then is, whether Mrs.

*French,* if she were living, could come in and shew her own declarations, made before and after the date of the deed, but not at the time of its execution, nor in the presence of her husband, or the grantees, to avoid that deed ? If she were disinterested, such declarations could not be received, because they were not made under oath ; and they are not to be received as confessions, because they are in her favour. Besides, the prattle of this woman, which was offered in evidence, would prove no material point in the case, if it were not otherwise exceptionable.

4. The charge of the court as to the free will of the grantor, is supported by all the authorities from *Bracton* to the writers of the present day. To avoid a deed, the threats must be of a specific kind, *viz.* such as relate to death, mayhem or loss of limb, and must be made under such circumstances as would operate upon a mind of common firmness. *Bract. lib.* 2. *fol.* 16 *b.* 2 *Co. Inst.* 483. 1 *Bla. Comm.* 131. 4 *Cruise's Dig.* 406.

SWIFT, Ch. J. In this case, the plaintiffs claimed as heir at law, in right of the wife, to *Anna French ;* and the defendants claimed by deed from said *Anna* and her husband *William French.* The deed is in usual form, with a reservation of the use of the land to the grantors during their natural lives. It is contended, that this is an attempt to create a freehold estate to commence in future, and that the deed is void.

But this mode of conveyance has been practised in this state from a period beyond memory ;(1) and no inconvenience

(1) Many proofs of this observation are to be found in our state and town records. It may not be amiss to refer the reader to one or two instances of an early date. The first is a conveyance in consideration of *marriage,* dated *April* 20th, 1644, about eight years only after the establishment of the colony at *Hartford. William Lewes,* sen. of *Hartford* covenanted with *Mary Whitehead* of *Windsor,* in consideration of a marriage to be solemnized between *William Lewes,* jun. and *Mary Hopkins,* daughter of the said *Mary Whitehead,* to give unto his son and the said *Mary,* if *God* dispose of a marriage betwixt them, one moiety of his house and land in *Hartford,* now in his possession, together with one half his household goods, &c. to them and their heirs forever ; " and after the natural lives of the said *William Lewes* sen. and *Felix* his now wife, to give unto his son and *Mary* his intended wife, the other moiety of his land in *Hartford,* with the houses built or to be built thereon, in possession and reversion, to them and their heirs forever." *Colony Records,* vol. 1. p. 417. The other instance is a conveyance in consideration of *blood,* by a deed dated *August*

*New-Haven,*
June, 1815.

Barrett
*v.*
French.

has resulted from it. This constant and immemorial usage is sufficient to make it a part of our common law; and a deed of this description may be deemed one of the common assurances of real estate. Nor was this intended to innovate upon the common law, or impugn the maxim that a freehold cannot be created to commence in future. That originated from the circumstance that livery of seisin was essential to constitute a freehold estate. But prior to the emigration of our ancestors from *England,* methods had been devised to supersede the necessity of conforming to that regulation. It is well known, that to avoid forfeitures, it was a common expedient to vest the fee of lands in one, to the use of another; and that to counteract this, the statute of the 27 *Hen.* 8. was passed, declaring that the fee should vest in him to whom the use was granted. It then became only necessary to convey to the use of one, and the statute transferred the use into possession, and the title passed without livery of seisin. Among the various modes devised was a *covenant to stand seised to uses.* This is where a man seised of lands in fee, covenants, in consideration of blood or marriage, to stand seised of the same to the use of his child, wife, or some other relation.

In the construction of deeds, courts adopted the liberal principle, that greater consideration was to be had for the

1st, 1673. The words of the grant are as follows: "This writing witnesseth, that I *Thomas Curtice* of *Wethersfield* in the county of *Hartford,* for and in consideration of the natural love and affection which I have and bear unto my son *Samuel Curtice* of the same town and place, have given, granted, assigned, set over and confirmed, and do by these presents fully, clearly and absolutely give, grant, assign, set over and confirm unto my said son *Samuel Curtice,* his heirs, executors and assigns forever, all the estate, right, title, use, property, possession, claim and demand whatsoever, I the said *Thomas Curtice* have, or in time to come might or should have, in or to a dwelling-house, and land three acres and an half, bounded, &c.; and also that barn which standeth within the land thereunto appertaining, containing forty perches, more or less, bounded, &c.; and also one piece of upland lying in the little west-field, containing twelve acres three roods; and thirty perches, bounded, &c.; to have and to hold the said dwelling-house, home-lot, barn and that rood of land, and the twelve acres three roods, and thirty perches of upland, with all the profits, privileges and appurtenances to the same belonging, immediately after my decease, and the decease of my now wife *Elizabeth,* unto my said son *Samuel Curtice,* his heirs, executors and assigns forever, and to his and their only proper use and behoof forever, my own life, and the life of my wife as aforesaid only reserved in the premises." Then follows a covenant of warranty. *Colony Records,* vol. 1. p. 436. *R.*

Barrett
*v.*
French.

passing of the estate, which is the substance of the deed, than the manner how, which is the shadow ; and that a deed should never be laid aside as void, if by any construction it could be made good.    Thus, a grant by one seised in fee of lands to his brother to be holden after the death of the grantor, with a covenant that he was well seised in fee, and that it should be lawful for the grantee to enter after the grantor's death, and peaceably to hold the same, has been construed to be a covenant to stand seised to the use of the grantee, and to pass the estate. *Roe* d.*Wilkinson* v. *Tranmarr, Willes* 682. So in the state of *Massachusetts*, it has been held, that a deed from father to son to have and to hold after the death of the grantor, with a covenant that he was seised in fee, and that he would warrant and defend the premises after his decease to the grantee, his heirs and assigns, was to be considered in law as a covenant by the grantor to stand seised to his own use during his life, and after his decease to the use of the grantee and his heirs.    *Wallis* v. *Wallis*, 4 *Mass. Rep.* 135.

The deed in question was from a mother, with the assent of her husband, to her sons, expressed to be for the consideration of love and good will ; and though it cannot operate as a feoffment, because it is calculated to create a freehold estate after the death of the grantor, yet being between relations, in consideration of blood, it may be deemed to be a covenant on the part of the grantor with her husband to stand seised to their use during life, and after their decease to the use of the grantees and their heirs ; and then the legal effect of the deed is, that the grantor was tenant for life, and that the grantees had an estate in remainder in fee-simple.

The plaintiffs offered two witnesses, who were tenants in common with them, if they had title, to shew that the deed was not valid ; who were rejected by the court as interested in the event of the suit.

Where one tenant in common brings an action of disseisin, and grounds his claim to recover on the common title, he recovers for the benefit of the whole ; the possession of one tenant in common recognizing the title of his co-tenants, is, in legal consideration, the possession of all.  Of course, if a tenant in common in such action obtains possession of the land, his co-tenants become likewise possessed.    In this case, the

witnesses were called upon to testify in support of their own claim of title to the land; and if the plaintiffs had recovered, they would, with the plaintiffs, have obtained possession of the land of which they were then disseised, and could have maintained an action of partition, or of account for the rents of the land. They were, therefore, directly interested in the event of the suit, and were properly excluded.

It has uniformly been decided, that the declarations of the grantor, when the grantee is not present, prior or subsequent to the execution of the deed, cannot be admitted in evidence to invalidate the deed.

The principles of law relating to the case were correctly stated by the court in their charge to the jury.

In this opinion the other Judges severally concurred.

New trial not to be granted.

*New-Haven, June, 1815.*

Barrett
v.
French.

---

## REGULÆ GENERALES.

ORDERED, that the party who shall move for a new trial in any case which shall be reserved for the opinion of the Judges of the Supreme Court of Errors, and the plaintiff in a writ of error which shall be brought to that Court, shall furnish three copies at least of such motion or writ of error, and lodge the same with the clerk thereof, for the use of the Court, at or before the second opening of the Court: Unless the party moving for a new trial shall obtain an order of the Court which shall allow such motion, dispensing with the same, and substituting in lieu thereof an abridgment of the case approved by said Court; and a like order by the Judge who shall sign said writ of error; in which cases lodging said abridgment shall be a compliance with this rule.

Party to furnish three copies of motion or writ of error for use of the Court.

An abridgment may be substituted, on obtaining an order of Court for that purpose.

ORDERED, that it shall be the duty of the counsel on both sides, in every case to be argued before the Judges of the Supreme Court of Errors, to furnish for their use three copies of a brief containing a statement of the points on which they rely, and of the authorities intended to be used in support of them.

Counsel to furnish three copies of their briefs for use of the Court.