CYRUS S. BESTOR *vs.* JAMES F. HICKEY.

First Judicial District, Hartford, October Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is not essential that an adult who promises to pay an obligation con-
tracted by him while a minor, should have actual knowledge of the
invalidity of the contract at the time of making such promise, inas-
much as he is then conclusively presumed to know the law.

A demand for payment accompanied with a threat to sue unless the debt
is paid, will not invalidate a promise of payment otherwise volun-
tary.

Argued October 5th—decided November 11th, 1898.

ACTION to recover rent, brought originally before a justice
of the peace and thence by the defendant's appeal to the
Court of Common Pleas in Hartford County, and tried to
court, *Case, J.;* facts found and judgment rendered for the
defendant, and appeal by the plaintiff for alleged errors in
the rulings of the court. *Error, judgment reversed and cause
remanded.*

The complaint alleged the defendant's lease of a market at
$5 a month. The defendant answered by a general denial,
and as a second defense pleaded infancy. The plaintiff re-
plied to the second defense: (1) A promise to pay after
coming of age; (2) that defendant had actually improved the
premises under the lease; (3) that defendant was carrying on
the business of a marketman by consent of his guardian, and
the occupation of the premises leased was necessary to that
business. The defendant demurred to the second and third
reply, and this demurrer was sustained. The record also
shows a rejoinder denying the allegations of the first and
second reply. By agreement or otherwise, the issues raised
by this rejoinder were treated as included in the issues on
which the parties went to trial.

The court made the following finding, and rendered judg-
ment for the defendant on the facts so found: "1. The de-
fendant became 21 years of age on the      day of May, 1895.

2. In April, 1894, the plaintiff owned premises in the town of Manchester, Connecticut, well adapted for use as a retail meat-market, and leased the same to the defendant for said purposes at an agreed monthly rental of $5,—which was a reasonable sum,—no term being specified, the term to begin May 1st, 1894. 3. The defendant took possession of said premises and carried on a retail market business there from May 1st, to August 1st, 1894, when his business was interrupted by his sickness and he gave it up, but by some mistake about delivering up the keys, he remained in possession of the place until the first of the following October. 4. No part of the rent has been paid, and in July, 1895, after the defendant had reached his majority, Herbert O. Bowers of said Manchester, an attorney at law, in whose hands the plaintiff had placed his claim for said rent, or for a part of it, for collection, wrote the defendant a letter calling his attention to the matter. 5. In response to said letter the defendant called upon said Bowers, who told him that a claim against him for three months' rent of said premises, amounting to $15, had been placed in his (Bowers') hands for collection by the plaintiff, and threatened the defendant with suit unless the same was paid. 6. The defendant was not informed by said attorney of his legal rights in the matter, and did not know at that time that he was not legally bound to pay said bill. 7. The defendant thereupon and in reply to said attorney, said he thought that he had paid $5 of said rent, and promised said attorney that if he, the defendant, could not find a receipt therefor, he would call again and pay the claim of $15,—said promise being induced by said attorney's attitude in the matter as found. 8. Subsequently, on one or more occasions, under the same conditions, still in ignorance of his legal rights, and in reply to the said attorney's demand for payment, the defendant promised said attorney that he would pay said claim of $15. Upon the trial of the cause, the plaintiff claimed as matters of law: (1) That the defendant's promise to the plaintiff's attorney, as found, amounted to a ratification of his contract made during his minority, and made the defendant liable for said rent to the amount of $15; (2) that

the defendant had so enjoyed and so availed himself of the consideration of the contract, that the parties could not be restored to their original situation, and therefore the defendant was liable for the full five months' rent, or $25, and asked the court so to hold. The court overruled both of these claims, and held that the proposition embodied in the second claim had no application to the case presented by the foregoing facts as found, and that as to the first claim, the facts did not show a ratification of the minor's contract, and therefore rendered judgment for the defendant." The appeal assigns as error, (1) that the facts found do not support the judgment on the ground of duress; (2) that the facts found show defendant validly bound himself by the promise made after coming of age, and legally support a judgment for the plaintiff to the amount of $15.

*Herbert O. Bowers,* for the appellant (plaintiff).

It was not necessary that the defendant should have had actual knowledge of his legal rights at the time he promised to pay the debt. *Morse* v. *Wheeler,* 4 Allen, 570. This is the leading case on this precise point. All other American cases, with two exceptions, in which the matter is touched upon at all, are cases which were decided on other points, and any allusions to this point are mere *dicta.* The Massachusetts court traces the whole difficulty to a *dictum* of Lord Alvanley in *Harmer* v. *Killing,* 5 Esp. 102, a case which was decided on the matter of duress. In one other American case, that of *Taft* v. *Sargeant,* 18 Barb. 320 (N. Y.), the same point is decided the same way as in *Morse* v. *Wheeler.* See also 6 Amer. & Eng. Ency. of Law, 648. The finding shows that the only threat used was a threat of a suit to recover the claim. The authorities are clear that a threat of this character does not constitute such duress as will render a promise made because of it involuntary. 6 Amer. & Eng. Ency. of Law, 57; *Hilborn* v. *Bucknam,* 78 Me. 488; *McMurtrie* v. *Keenan,* 109 Mass. 186; *Forbes* v. *Appleton,* **5** Cush. 115; *Peckham* v. *Hendrew,* 76 Ind. 47.

*James J. Quinn*, for the appellee (defendant).

The promise made by the defendant to the plaintiff's attorney, after the defendant had attained his majority, did not satisfy the requirements of the law of Connecticut regarding the ratification of a minor's contract. *Catlin* v. *Haddox*, 49 Conn. 492; *Benham* v. *Bishop*, 9 Conn. 330; *Wilcox* v. *Roath*, 12 id. 550; Greenl. on Ev. § 367; *Edmunds* v. *Mister*, 58 Miss. 765; *Bennett* v. *Collins*, 52 Conn. 1.

HAMERSLEY, J. This appeal raises two questions. 1. Is a promise made by an adult to pay the sum agreed to be paid for use of premises occupied by him under a lease, while an infant over fourteen years of age, invalid, because he did not know, at the time of the promise, the law which determines the liability of minors? 2. Upon the facts found, was the promise made under duress?

We have never had occasion to discuss the first question, and it is of such a nature as to call for a somewhat careful examination of the policy which underlies this branch of the law of infancy. Every person from birth until the completion of his twenty-first year is in law an infant; but his actual capacity to contract is different at different portions of this period, and the law in respect to his contracts is based upon this fact. An infant under seven years of age is actually incapable of contracting, as fully so as an idiot or lunatic; the law recognizes this fact and pronounces his personal contracts absolutely void; he can contract only through a guardian, and such contracts should be beneficial to the infant. From seven to fourteen his actual discretion varies, and the law applicable to his contracts, certainly with us, is still unsettled; probably he would be treated as wholly incapable of contracting. From fourteen, *i. e.* the age of puberty, he has discretion, is capable of contracting as truly, though not usually as wisely, as at any period of his life; and the law in recognition of this fact permits him to contract. He can assume the obligations of the most important contract in life, that of marriage, and may dispose of his personal property by will. (By statute a testator must be eighteen years old.)

These distinctions in respect to actual capacity are derived from the Roman law, which treats them more in detail. In their essential features they were adopted by the English common law, quite fully and directly in the criminal law and the law of wills, and they are the substantial basis of the law of infants' contracts. Confusion, however, arose from failure of the courts to refer in discussions of void contracts, to the natural and fundamental distinction in this respect between an infant in arms and one who has passed the age of puberty; the disinclination of the early common lawyers to acknowledge any debt to the civil law may possibly account for this. At all events, the failure is responsible for the fruitless attempt to draw a sensible distinction between the otherwise valid contracts of an infant capable of contracting, as being either void or voidable. The distinction between the capacity of infants under fourteen, certainly of those under seven, and that of infants who have reached the age of puberty, is based on the facts of nature as well as on sound policy, and must be recognized by our common law.

There is, however, a distinction between a minor's natural capacity to contract, *i. e.* the mental ability and discretion requisite to an intelligent assent, and his capacity to make such a contract as will bind his person and property. The one rests on a law of nature; the other is limited by municipal law. The latter capacity is inconsistent with the rights of parents; his services belong to them. It may be inconsistent with the completion of his education and preparation for the duties of citizenship. A minor under paternal government is generally, by reason of this subjection, as well as by immaturity of age, less fit to manage his property discreetly; the law ought, therefore, to furnish him some protection. Moreover, through his own carelessness, induced in part by his condition of subjection and the liability of others to take advantage of his weakness, there is danger that his property may be wasted, and the State has, independent of any duty of protection to the minor, a direct interest in preventing such waste. *Expedit Reipublicae ne sua*

*re quis male utatur.* This rule of policy supports our statute of overseers, first passed in 1719. 6 Col. Rec. 112.

For all these reasons the contracts of minors over fourteen years of age, so far as the question of capacity is involved, are an exception to the general law of contract, and are subject to a rule of public policy, founded in reason, but in some respects necessarily arbitrary. In pursuance of that policy the minor may, with certain exceptions, avoid his contracts during his minority, and upon coming of age has, with certain exceptions, the option to avoid or confirm such contracts. This option results from the removal of an incapacity, not to contract, but to bind himself by contract. As Pothier says, infants who have passed the age of puberty are rather incapable of binding themselves by their contracts, than absolutely incapable of contracting. *Traité des Obligations,* Part 1, Chap. 1, § 1, Art. 4. A similar thought is intended when CHIEF JUSTICE HOSMER, in *Kline* v. *Beebe,* 6 Conn. 494, 503, speaks of the law suffering "the contract to hang *in equilibrio.*"

The contract of a minor, including the power, on coming of age, without any new consideration, to make the contract binding on him, is a transaction *sui generis,* and is not strictly analogous to any other known to the law. The nature and validity of the contract depend on the acts of a minor who has the capacity to assent, but not the capacity to bind himself during minority; the right to enforce the contract depends on the acts of an adult who has no special incapacities nor privileges. When he exercises his option, which results from his contract made while a minor, to bind or not to bind himself by the contract to which he has assented, he stands as every one else stands in the performance of a voluntary act; he is presumed to know the law. So in the present case, the defendant knew he had, while a minor, agreed, for a fair consideration which he had received and enjoyed, to pay the amount in question to the plaintiff, and voluntarily, in specific terms, promised to pay that sum. This promise bound him to make the payment by force of the same law that exempted him from liability until the promise was made.

is immaterial whether he knew or did not know the law ; if such knowledge could affect his act, he is charged with the knowledge, and cannot be permitted to show the contrary.

There are *dicta* to be found in some text-books, and in opinions of the court in cases decided elsewhere, and some cases hold, that the promise of the adult to bind himself by a contract made in infancy must not only be voluntary and explicit, but must be made with knowledge that he is not legally liable unless the promise is made. The claim of the necessity of such knowledge, first appears in a *dictum* in *Harmer* v. *Killing*, 5 Esp. 102, a *nisi prius* case tried after the date of our independence. The error has been exposed and its effect traced, by the Massachusetts court in *Morse* v. *Wheeler*, 4 Allen, 570. But the erroneous *dictum* afterwards crept into a brief and hasty opinion of the same court in *Owen* v. *Long*, 112 Mass. 403, 404. It is difficult to account for this error. Possibly it arose from treating the promise not as a mere adjunct of an infant's contract, authorized by the public policy which controls such contracts, but as an independent act and strictly analogous either to a waiver, or a ratification, or a new contract. Such a promise is frequently indicated by all these names ; they have been indifferently used in several of our decisions as terms of convenience and partial illustration, but it certainly cannot be accurately described by either. In a sense such a promise operates as a waiver ; but the contract of an infant cannot be relieved from the original want of capacity to bind, through the operation of the law of waiver ; the voluntary specific confirmation of the adult is required to perfect the contract of the infant. Nor is it, except by figure of speech, a ratification. The infant is not an unauthorized agent of the adult, and the contract is not strictly analogous to one tainted by fraud. Perhaps the promise comes more closely to being a new undertaking, but it clearly is not one. The action must be brought on the original contract; the promise affects only the liability, and has no effect unless there is an existing contract ; when that is established through the acts of the infant, the liability must be proved and is limited by the promise of the adult.

Reeve, Dom. Rel. 240 ; *Edgerly* v. *Shaw*, 25 N. H. 514. We deem it immaterial whether the promise, if it could be treated as being strictly a waiver, or a ratification, or a new contract, could or could not be held invalid by reason of ignorance of the law. The validity of the promise does not depend upon such analogies. The option of the adult to confirm or rescind, is an attribute of the infant's contract ; the validity of a promise to pay is derived from the exceptional law which controls the contracts of infants ; it is an exercise of deferred capacity involved in the original contract. That an adult may relieve himself from the legal effect of such an act by setting up an unexpressed and secret belief as to the law which everyone is presumed to know, involves an addition, novel in this State certainly, to the law of infants' contracts, and for obvious reasons obnoxious to sound public policy.

The promise was not made under duress. In asking the defendant for payment, and in threatening to commence a civil action if payment were not made, the plaintiff acted legally. Such threats cannot be held to invalidate an act otherwise voluntary. 1 Swift's Dig. 311 ; *Barrett* v. *French*, 1 Conn. 354, 356. If the defendant intended to rely on duress, he should have alleged it. *McVane* v. *Williams*, 50 Conn. 548.

The court overruled the plaintiff's claim, that the minor was bound to pay the rent because he had actually improved the premises under the lease. We do not consider this ruling. It is not assigned as error, and its decision either way could not affect the disposal of this case upon its merits.

The record contains the facts on which the judgment below is founded. Those facts do not support the judgment rendered ; they do support and require judgment for the plaintiff.

There is error, the judgment of the Court of Common Pleas is reversed, and the cause is remanded for further proceedings according to law.

**In this opinion the other judges concurred.**