[Civil No. 4693.   Filed December 11, 1944.]

[154 Pac. (2d) 520.]

WILLIAM S. SEGAR, Appellant, v. W. K. BAILEY, Appellee.

Mr. Charles P. Elmer, for Appellant.

Mr. Carl D. Hammond, for Appellee.

STANFORD, J.—This action was brought in. the superior court by appellee against the appellant, who had assigned to him four promissory notes from J. B. Graham. The notes were each for $500.

Prior to his action and while Graham was still the owner of the notes, he brought an action on the first of the four notes. The notes were all dated June 18, 1940, and the maturity of the first one was August 1, 1940. Suit was brought on it August 30th of that year. Summons was issued the same date and the return of the sheriff shows receipt of summons August 30th, but the return was dated February 12, 1942, setting forth that he was unable to locate Segar, the defendant in the action.

For each note in the instant case a separate cause of action is set out in the complaint. The case was tried without a jury and findings and judgment were rendered in favor of appellee on August 2, 1943. From such judgment this appeal is taken.

We believe the six assignments of error complained of by the appellant can be covered by the following: (1) As to the cause of action brought by J. B. Graham against this appellant before the filing of this case, the trial court erred in denying the motion to dismiss because of another action pending and undetermined; (2) that appellee was not the real party in interest; (3) that there was no consideration for the delivery of the notes in question to the assignee, the appellee herein; (4) that the notes were executed and delivered under duress; (5) that the trial court failed to make findings as to whether or not the appellee was the only party in interest; (6) that costs for witness J. B. Graham should have been disallowed because he was a part owner of the notes and therefore a necessary party to the action.

■ In reference to the question of another action pending, our Code, Sec. 21–320, reads as follows:

"*Abatement if summons not served in one year.*— An action shall abate if the summons be not issued and served, or the service thereof by publication com-

menced within one (1) year from the filing of the complaint.''

Section 21–301, Arizona Code Annotated 1939, reads:

*"Commencement of action.*—A civil action is commenced by filing a complaint with the court.''

The present action was filed in the superior court of Mohave County on May 22, 1943. The records of that court show, relative to the dismissal of this action on note due August 1, 1940, the following: ''January 18, 1943, certificate of dismissal by abatement.''

Considerable has been submitted as to the fact that the first action filed by Graham against the appellant was pending at the filing of this action in the superior court and therefore this present action could not be had against the appellant on the first cause of action for which suit was brought by Graham. We hold that the minute entry of January 18, 1943, disposes of the first action.

The second contention of appellant is that Bailey, the appellee, is not the real party in interest in the case. $500 was paid on May 12, 1943, and $600 was paid on account of the notes on July 1, 1943, to Graham by Bailey. The total consideration that was to be paid by plaintiff Bailey for notes was $1800. The appellee was to pay the balance of $700 when the suit was settled.

Our Code, Section 21–501, reads:

*"Real party in interest.*—Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a stat-

ute of the state so provides, an action for the use or benefit of another shall be brought in the name of the state.''

The case of *Mosher* v. *Bellas*, 33 Ariz. 147, 264 Pac. 468, 369, reads in part as follows:

''It cannot be questioned that the assignee of a chose in action is, under the law, the legal owner of it and as such entitled to sue for its collection. *Sroufe* v. *Soto Bros. & Co.*, 5 Ariz. 10, 43 Pac. 221; *Leon* v. *Citizens' Building & Loan Ass'n*, 14 Ariz. 294, 127 Pac. 721, Ann. Cas. 1914D, 1151. . . . ''

█ On the third point raised that there was no consideration for the giving of the notes, Sec. 52–121, our Code, reads as follows:

''*Consideration to maker and signer presumed— Value defined.*—Every negotiable instrument is deemed *prima facie* to have been issued for valuable consideration, and every person whose signature appears thereon to have become a party thereto for value.

''Value is any consideration sufficient to support a simple contract. Any antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time.''

The question that arises is what benefit did Segar get for giving these notes? The contract given at the time of giving the notes says there should be terminated two certain contracts theretofore entered into between Graham and this appellant, and the agreement recites:

''That for and in consideration of the cancellation and annulment of those two (2) certain contracts heretofore entered into by and between the parties hereto, and bearing dates of Sept. 21, 1939 and October 13, 1939, respectively, one being a development contract and the other a production contract, and for other good and valuable considerations running from each party hereto to the other party hereto, it is

hereby mutually understood and agreed as follows, towit:"

We see no merit to this contention of the appellant.

As to the next assignment of error, that the notes and contract were signed under duress, we quote the following from the evidence of appellant:

"The Witness: Well, the threat against me was not made against me over what had happened. He, Graham, was angry; he was not normal.

"Mr. Elmer: Q. What was that? A. He said he would beat the Hell out of me.

"Q. About what? A. Because things had not gone well."

It appears from the evidence that the appellant needed an experienced mining man to do the work about the Silver Hill Mine near Chloride, Arizona, and he inquired of Mr. Ben Griffith, an attorney of California, and also a friend of appellant, and Griffith recommended Graham.

The evidence also shows that when the difficulty arose between the appellant and Graham that Attorney Griffith was in Kingman, the county seat of Mohave County, and Griffith drew the contract whereby the notes were turned over.

Appellant further testified:

"Q. Well, then, do I understand that you signed those notes and that contract, Plaintiff's Exhibit No. 5 for the sake of terminating your contractual relationship with Mr. Graham and getting him off of the Silver Hill Mine? A. Absolutely.

"Q. Did Mr. Graham ever make any threats that if you did not make some settlement of this sort with him he would take some proceedings? A. I don't recall that he did.

"Q. Did he make any threats that you can now recall other than the one you mentioned a few moments ago? A. No direct threats. He was very unpleasant with me the last three or four weeks he was there."

██ In support of his contention appellant cites the following from 10 C. J. S., Bills and Notes, § 492, p. 1084:

"Instruments executed under duress are ordinarily not void, but voidable at the instance of the oppressed party; however, it has been declared that such an instrument is void between the parties, but voidable as to an innocent purchaser for value without notice, and instruments executed under threats of criminal prosecution or arrest have been held to be void, as contrary to public policy."

Just following the section above quoted, C. J. S., refers to duress as follows:

"It constitutes duress, sufficient to invalidate a bill or note, to deprive a person of his freedom of will by the use of threats or other unlawful means, so that the instrument obtained from him is not his free and voluntary act. . . . "

We quote the following from *Kline* v. *Kline,* 14 Ariz. 369, 128 Pac. 805, 808:

"Duress, to be available as a ground for setting aside a conveyance, must be of such a nature as to excite an apprehension or fear of great bodily harm or illegal punishment, and the violence or threats should be of such degree as to cause a person of ordinary firmness and courage to yield. 1 Pom. Eq. Juris., § 71, p. 129 (3d Ed.). But, in order to avoid a deed on the grounds of duress per minas, the threat should be such as to strike with fear a person of common firmness and constancy of mind. *Barrett* v. *French,* 1 Conn. 354, 6 Am. Dec. 241."

From the case of *Lundvall* v. *Hughes,* 49 Ariz. 264, 65 Pac. (2d) 1377, 1378, is the following:

"Under the common law, duress by means of threats was generally confined to threats of physical violence or criminal prosecution, but the modern doctrine has considerably relaxed this rule. Duress is defined in Restatement, Law of Contracts, par. 492, as follows:

" '(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

" '(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.' "

■ We cannot believe that Mr. Segar, the appellant, in the execution of the notes and contract was deprived of his freedom of will by threats or conduct on the part of Graham.

■■ As to the last two assignments of error, one being that the trial court failed to make findings of whether or not appellee was the real party in interest, and the other being that J. B. Graham was at least a part owner of the notes sued on and therefore a necessary party to the action and not entitled to fees as a witness, we have upheld the trial court to the end that Bailey, the assignee of the notes, may bring this action. He may bring it notwithstanding, should it be true, that Graham had an interest. The court did not have to make a finding as requested by appellant as to whether or not Bailey, the appellee, was the real party in interest, but since Graham may have been interested to the extent that he was to be paid the balance of $700 when the suit was finished, he is not, in our opinion, entitled to fees as a witness, and we so hold.

Judgment is affirmed in all respects except as to the payment of witness fees which are disallowed.

McALISTER, C. J., and ROSS, J., concur.